**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MINNIE THOMAS,**

        **Plaintiff,**

**-vs-**                             **Case No. 6:04-cv-1706-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the decision of the Defendant to deny Plaintiff's application for social security benefits. For the reasons set forth herein, the decision is **AFFIRMED**.

### *PROCEDURAL HISTORY*

Plaintiff filed an application for a period of disability and disability insurance benefits on April 15, 2002, alleging disability beginning March 22, 2002 (R. 40-44). The application was denied initially and at the reconsideration level, and Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("the ALJ"), on April 14, 2004 (R.168-83). On July 16, 2004, the ALJ issued a decision unfavorable to Plaintiff (R. 8-16). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 4-6).

### *NATURE OF DISABILITY CLAIM*

Plaintiff claims disability based on pain in her left arm and right leg, lower back pain and chest pain (R. 51, 180-81).

*Summary of Evidence before the ALJ*

Plaintiff was 54 years old at the hearing, with a high school education via General Equivalency Diploma, and past relevant work experience as a food prep/lunchroom attendant for a public elementary school (R. 84, 171-72). Plaintiff described the job as preparation of food, cleaning (wiping tables and washing dishes) and cashier (R. 66).

The medical evidence indicates that Plaintiff has a history of left arm pain, beginning in October 1999 (R. 92). An electromyography dated October 12, 1999, revealed acute and chronic denervation in deltoid greater than biceps, suggesting C5 and C6 nerve root disease (R. 93).

On November 4, 1999, neurologist Todd Hartley, M.D., examined Plaintiff for her complaints of dysphonia and left arm pain and weakness (R. 104). Dr. Hartley noted that a previous EMG had shown a left C5-6 radiculopathy. Dr. Hartley initiated treatment with medication, and was to reexamine Plaintiff after she had seen an otolaryngologist (R. 104). Plaintiff returned to Dr. Hartley in January, and her medication was changed (R. 103). Plaintiff returned again on March 10, 2000, and reported that her arm pain and weakness had cleared, but her dysphonia remained (R. 102). Dr. Hartley had no more to offer her at that time, as Plaintiff did not wish to try steroids.

On February 21, 2001, Plaintiff was seen at the Newman Family Medicine Group (R. 121), where she reported that she had gone to the emergency room because she experienced dizziness and vertigo, her blood pressure was high, and she felt short of breath. A CT scan, an EKG, and laboratory tests were reviewed, and were reportedly normal (R. 121). Examination showed Plaintiff's blood pressure was 168/118 and she appeared tired, but all other clinical findings were unremarkable (R.

121). The doctor assessed labyrinthitis. Plaintiff's inner ear problem gradually improved (R. 115-20) and was fully resolved at the time of the hearing (R. 180).

On June 22, 2001, Plaintiff returned and complained of pain in the left knee joint (R. 115). Examination revealed knee flexion to ninety degrees and full extension with no tenderness, redness, edema, or effusions, and negative motion tests. *Id.* On September 18, 2001, Plaintiff reported that she presented to an orthopedic clinic for her knee pain, and no problem was found (R. 114). Plaintiff reported that her knee pain had resolved, but she was having some right hip tightness and some back pain originating in the neck region. *Id.* Examination revealed mild stiffness and mildly diminished range of motion in Plaintiff's back, but straight leg raising signs were normal, and gentle stretching exercise and medication were prescribed (R. 114).

On return visit on October 12, 2001, Plaintiff had good range of motion of the neck and back, with negative SLR test and no tenderness (R. 113). Plaintiff reported that the medication helped her upper back and shoulder pain, but Plaintiff was now having low back pain. She was to be seen by a rheumatologist.

On November 14, 2001, Plaintiff underwent an electrodiagnostic consultation by Arnaldo Isa, M.D. (R. 95). Plaintiff reported experiencing left arm pain over a week ago, with pain on arm flexion. She did not describe any numbness, tingling or burning sensations distally in the hand and really no sensory disturbance over the outer aspect of the arm but rather just a deep pain. *Id.* On examination, Plaintiff had normal bulk and tone in her arms, there were no fasciculations or atrophy, and Plaintiff had normal strength, and intact sensory signs (R. 96). Tinel's sign was negative. Electrodiagnostic studies revealed some slowing of median sensory studies which might be seen with carpal tunnel

syndrome, but Dr. Isa saw no evidence of radiculopathy or neuropathy and recommended physical therapy and an MRI. *Id.*

An MRI of the Cervical Spine dated December 3, 2001, revealed multilevel cervical degenerative disc disease with problematic changes at C5-C6 with broad-based and more right sided protrusion, and at C6-C7 with broad based central disc protrusion (R. 105).

Plaintiff returned to Dr. Isa on December 13, 2001 complaining of left arm pain although it seemed to be slightly better (R. 94). A new complaint of bilateral leg pains was added. Dr. Isa noted the MRI results. Impression was left arm radiculitis, and Dr. Isa thought Plaintiff's leg pains were radicular and partially osteoarthritic due to deconditioning. *Id.* Dr. Isa referred Plaintiff to pain management and felt she could benefit from epidural injections and physical therapy.

Plaintiff returned to Newman Family Medicine Group on December 18, 2001, complaining of right leg pain and left knee swelling (R. 112). On examination, the right leg had full range of motion, equivocal positive SLR test, and mild decrease in strength compared to the left leg. The left knee had no edema, full range of motion, and no effusion. Assessment was right side sciatica, and left knee pain -- degenerative changes. *Id.* Plaintiff was advised to see an orthopaedic doctor for a second opinion.

Plaintiff returned to the Newman Group on January 18, 2002 (R. 111), reporting that she had undergone epidural injection and was starting physical therapy in a few days. Her back was reportedly "a little better" but she did not notice much improvement in her sciatica. She returned on February 6, 2002, complaining of a rash (R. 110). On March 13, 2002, Plaintiff returned, complaining of muscle spasms in the left neck and down the left shoulder (R. 109). She was assessed with trapezoid strain and spasm.

On April 3, 2002, neurologist Harinder Sidhu, M.D., examined Plaintiff for complaints of symptoms in her extremities, especially her left shoulder area (R. 124-25). Plaintiff reported that she had no difficulty getting up from a low seat or reaching up for things and did not need assistance with activities of daily life (R. 124). Plaintiff did report that she has had difficulty carrying on working in food service. *Id.* On examination, Dr. Sidhu noted that Plaintiff's mental status, speech, language, cranial nerves, motor and sensory systems were normal (R. 125). Her gait was normal, and she was able to walk on heels and toes. There was no asymmetry noted; SLR was negative bilaterally, and C-spine movements were painless and full range. *Id* Dr. Sidhu opined that Plaintiff did not have a focal neurological condition (R. 125). Blood tests were ordered for Lyme disease and Epstein-Barr disease, and results were negative (R. 122). An EMG showed moderately severe right and left carpal tunnel syndrome, but no other neurological abnormality (R. 122-23). Dr. Sidhu recommended carpal tunnel release surgery on Plaintiff's right hand, but Plaintiff declined (R. 123).

On April 19, 2002, Plaintiff returned to Newman Family Medicine Group, complaining of left arm pain (R. 108). Assessment was left arm pain, and Plaintiff was instructed to go to the emergency room, if pain became intolerable (R. 108). Plaintiff reportedly did go the hospital, and returned to the Group, complaining of non-productive cough and continued left arm pain (R. 107). On May 1, 2002, Plaintiff returned to the Newman Group complaining of shortness of breath and continued left arm pain (R. 106).

Plaintiff was hospitalized on May 2, 2002, with shortness of breath and nonproductive cough (R. 128). She was assessed with pneumonia, and was discharged May 5, 2002, after improving clinically (R. 126).

Pulmonologist Sigfredo Aldarondo, M.D., examined Plaintiff on June 4, 2002, and found no

evidence of pulmonary pathology to correlate with her left shoulder and arm pain (R.154-55). A CT scan was normal except for evidence of a hiatal hernia; pulmonary function tests were normal (R. 154-55). Dr. Aldarondo thought Plaintiff had gastroesophageal reflux disease (GERD) and recommended she avoid eating spicy food and eat smaller portions (R. 155).

On August 22, 2002, a non-examining state agency medical consultant reviewed the record and opined that Plaintiff could perform an unlimited range of medium work.[1] (R. 138-45).

Plaintiff returned to the Newman Group on September 3, 2002, complaining of low back pain, and reporting that her leg pain had eased (R. 165).

Another non-examining state agency medical consultant reviewed the record on October 15, 2002, and agreed with the prior state agency physician's opinion that Plaintiff could perform medium work, but needed to avoid concentrated exposure to hazards (R. 146-53).

The next medical record is dated April 18, 2003, from Newman Group (R. 164). Plaintiff presented with an unrelated issue. Examination was normal, and no complaints were noted. Plaintiff returned in June, complaining of a mass under her chin (R. 160).

Plaintiff was hospitalized in July 2003, for chest pains; however, all diagnostic tests were negative and the doctor thought there was "a lot of psychosomatic component" involved (R. 156).

On January 7, 2004, Plaintiff was seen at Newman Family Medicine Group with complaints of right hand stiffness and locking of the ring finger (R. 158). Plaintiff was seen by orthopedic specialist Jeffrey Deren, M.D., on January 13, 2004, for her complaints of right ring finger pain and

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, the Commissioner determines he or she can also do sedentary and light work.
20 C.F.R. § 404.1567(c) (2004).

triggering (R. 166-67). She reported having pain, stiffness and swelling for about one month. There was a sensation of locking and triggering associated with flexion and extension. As the day goes on, it reportedly got better (R. 166). She reported that her carpal tunnel symptoms were minimal, with very intermittent numbness at night. Her numbness "goes away fairly quickly and she is functional during the day" (R. 166). It was noted that her carpal tunnel symptoms were stable, and not worsening with time. On examination, she was tender, with reproducible triggering. She had full range of motion of her fingers and wrists on both sides, with no joint instability, no masses, lesions or cysts, and a normal motor exam. She was assessed with right ring trigger finger and received an injection of lidocaine (R. 166-67). It was noted that her carpal tunnel symptoms were minimal.

Plaintiff appeared and testified at the administrative hearing regarding her pain and limitations. Plaintiff testified she had problems with her left arm, chest, lower back, neck, and sometimes her knees (R. 175). Plaintiff had not sought any treatment for her knees, had taken two shots in her back that helped for a couple of days, and had not had treatment on her neck (R. 175-76). Plaintiff received cortisone shots for her left arm, but these did not help (R. 176). Plaintiff testified her blood pressure was under good control with medication (R. 177). She testified that she spends her days getting something to eat, sitting around her house watching television, sometimes going to the store, and Plaintiff noted that she was able to drive, unless she was experiencing back spasms (R. 177-78). Plaintiff felt she could sit 20 minutes or so at a time, and could stand for 15 to 20 minutes (R. 179). She felt that she could walk a half mile, and could comfortably lift a gallon of milk (R. 179-180).

The ALJ found that Plaintiff had chest pains, cervical degenerative disc disease, and chronic left arm pain, impairments that are severe, but not severe enough to meet or medically equal the Listings (R. 13). The ALJ found Plaintiff's allegations to be not totally credible, and determined that

Plaintiff had the residual functional capacity for light work activity (R. 16). The ALJ found that Plaintiff's impairments did not prevent her from performing her past relevant work as a food service worker, and she was therefore not under a disability, as defined in the Social Security Act (R. 16).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff contends that the decision of the Commissioner that Plaintiff could perform her past work is not based on substantial evidence. Specifically, Plaintiff cites error in discrediting Plaintiff's allegations of pain.

As noted above, Plaintiff has alleged that her primary disabling impairment is pain. Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law,

the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, Plaintiff has met the first prong of the test, as the ALJ noted impairments of chest pains, cervical degenerative disc disease, and chronic left arm pain. Substantial evidence supports the ALJ's determination that Plaintiff's condition did not, however, satisfy the remaining prongs. As noted above, all diagnostic tests for her chest pain were negative, with the hospital doctor opining that a psychosomatic component was involved. The most recent evaluation of Plaintiff's carpal tunnel symptoms showed a stable, very minimal intermittent numbness at night, and full function during the day. Plaintiff reported to her doctor that her knee pain had resolved, and nerve conduction studies showed no evidence of an impairment in her arm or legs. As such, the ALJ's determination that Plaintiff's allegations of disabling pain were inconsistent with this evidence is well-supported.

While Plaintiff points to the MRI of the cervical spine, which showed cervical degenerative disc disease, it is not the mere diagnosis of a disease or condition that is disabling, but rather the functional limitations caused by the condition. While this MRI could support disabling limitations, the medical record does not indicate any. On Dr. Sidhu's examination, Plaintiff's left shoulder area's motor and sensory systems were normal and her cervical spine movements were full and painless. Moreover, Plaintiff testified that she had not sought treatment for neck problems, and none of her treating physicians opined that she was disabled from work. Additionally, the non-examining state agency physician's opinions support the ALJ's decision.

Plaintiff next contends that her arm pain and weakness precluded her from performing "the full range of work." Brief at 6. Here, however, the ALJ concluded that Plaintiff could perform her *past relevant work.*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). The ALJ determined this claim at step four. At this step, the Commissioner need not determine whether a Plaintiff can perform a full range of work or other work that exists in the national economy; rather, the issue is whether Plaintiff's impairments prevent her from performing her particular past work. [2] The ALJ found that Plaintiff was able to return to her prior occupation of food

---

[2] By stating "particular past work" the court does not imply that the Commissioner must show that Plaintiff is capable of performing the work as she previously performed it for a particular employer. The claimant has the burden of proving the inability to perform his or her previous work. *Lucas v. Sullivan,* 918 F. 2d 1567, 1571 (11th Cir. 1990). The claimant must show the inability to do the previous type of work, not merely the specific job he or she held. *Jackson v. Bowen,* 801 F. 2d 1291, 1293 (11th Cir. 1986). A claimant is not disabled when it is determined that she retains the residual functional capacity to perform the demands and duties of a particular past relevant job or the functional demands and duties of the occupation as generally required by employers in the national economy. Here, the ALJ found that Plaintiff was able to return to this occupation as it is generally performed in the national economy (R. 15).

service worker.  As detailed above, this finding is supported by substantial evidence, and thus, must be affirmed.

### *CONCLUSION*

The decision of the Commissioner is supported by substantial evidence and was made in accordance with proper legal standards.  It is therefore **AFFIRMED.**  The Clerk is directed to enter judgment accordingly, terminate all pending matters and close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 2, 2005.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record